## UNITED STATES *v.* MOSELEY.

APPEAL FROM THE COURT OF CLAIMS.

No. 248.   Argued October 28, 1902.—Decided December 1, 1902.

The Secretary of the Interstate Commerce Commission is entitled to be reimbursed for telegrams sent by him pursuant to directions of the Commission, on presenting vouchers in the form prescribed by law to the proper auditing officer of the Treasury Department, approved by the chairman of the Commission and accompanied by the request of the chairman that the rules of the Comptroller as to the production of copies of telegrams for which credit is asked be disregarded on account of the confidential character of the messages, the secretary having also offered to submit the books of the Commission to the Comptroller and Auditors of the Treasury.

THE case is stated in the opinion of the court.

*Mr. Assistant Attorney General Pradt* for appellants.

*Mr. Holmes Conrad* for appellee.

MR. JUSTICE McKENNA delivered the opinion of the court.

This was a petition in the Court of Claims to recover the

sum of $310.37, disallowed by the auditing officers of the government.

The petitioner is Secretary of the Interstate Commerce Commission, and the claim disallowed was incurred for telegrams sent at the direction of the Commission. Judgment passed for the petitioner October 28, 1901, and the United States took this appeal.

The findings of fact and the conclusion of law by the Court of Claims were as follows:

" I. The claimant herein, a citizen of the United States, is Secretary and disbursing agent of the Interstate Commerce Commission, and as such agent it becomes his duty to disburse the moneys appropriated by Congress from time to time to enable the Commission to carry out the provisions of the act of February 4, 1887, and amendments thereto. The disbursements were made under the direction of the Commission; and the accounts therefor, together with itemized vouchers, approved by the chairman of the Commission, were presented to the accounting officers of the Treasury Department for the quarter and year ending June 30, 1899; and also his supplemental accounts, with vouchers so made out and approved, for the same year, among which were the accounts and itemized vouchers for $310.37 for money paid from time to time to the Western Union Telegraph Company and Postal Telegraph Cable Company for sundry dispatches sent over their lines under the direction of said Commission.

" II. The accounts for money so expended for telegrams were disallowed by the Auditor for the State and other Departments, and on appeal to the Comptroller of the Treasury the decision of the Auditor was sustained on the ground that the claimant had not complied with the requirement of the Comptroller to furnish the original telegrams or copies thereof, or, if of a confidential nature, to furnish in lieu thereof a certificate to that effect signed by the chairman of the Commission.

" In response to that ruling the claimant presented and filed with his said accounts the following order, issued by the Commission April 27, 1899:

" ' That so much of the Comptroller's communication as requires

copies of telegrams relating to the business of the Commission to accompany telegraph vouchers for which credit is asked be disregarded by the Secretary and disbursing agent, the Commission holding that such messages are so far confidential as to justify refusal to disclose their contents, and that the requirement for their production is unreasonable and against public interest.'

" And that the Interstate Commerce Commission did, through their Secretary, address to the Hon. R. J. Tracewell, Comptroller of the Treasury, a letter dated October 4, 1900, containing an invitation to inspect the books, papers and other matters relating to the accounts of the disbursing agent, as follows, viz. :

" 'By the act of March 15, 1898, Acts 1897–99, page 316, it is provided :

" ' " Sec. 5. All books, papers and other matters relating to the accounts of officers of the government in the District of Columbia shall at all times be subject to the inspection and examination by the Comptroller of the Treasury and Auditors of the Treasury authorized to settle such accounts or by the duly authorized agents of either of said officers."

" ' I am authorized by the Commission to extend to the officers and agents referred to in this section the fullest opportunity of making such examination, in the offices of the Commission, of all such books, papers and other matter relating to the accounts of the disbursing agents as they may see proper to examine, and among these all such telegrams as are embraced in the accounts of the disbursing agent. By this means the objections which the Commission have made to the undue publicity of their telegrams will, in some measure, be avoided, and the purposes of the auditing officers should be thereby fully attained.'

" But the decision of the Comptroller was adhered to.

" III. The accounts and itemized vouchers were presented to the accounting officers in the form prescribed by statute ; that is to say, that each telegram sent by the Commission, and the cost thereof, and the dates, number of words, persons from and to whom sent, places from and to which sent, and the charge for each message transmitted, were fully shown in a voucher approved by Martin A. Knapp, chairman, and the defend-

ants concede the correctness of the several amounts so expended.

"IV. After the disallowance of the claimant's accounts for the moneys so disbursed to the Western Union Telegraph Company and Postal Telegraph Cable Company, as aforesaid, and to avoid any balance being stated against him, he, under protest, paid into the Treasury of the United States the full amount of the sum so disallowed, to wit, $310.37.

"V. That prior to January, 1899, the original telegrams, or copies thereof, or certificates that such telegrams were of a confidential character, were not required by the auditing officers of the Treasury to be produced by the disbursing officers of the Department of State, or the Post Office Department, or the Navy Department, or the Interstate Commerce Commission, with the vouchers produced by these disbursing officers, for the telegrams sent from such Departments on official business.

"VI. The correspondence by official communications between the Comptroller of the Treasury and the claimant appears in the letter of June 15, 1900, from Edward A. Moseley, Secretary and disbursing agent, to Hon. R. J. Tracewell, Comptroller; letter of July 23, 1900, from the Acting Comptroller to the claimant; the letter of October 4, 1900, from the claimant to the Comptroller, and the letter of October 6, 1900, to the claimant; which were filed as part of the claimant's petition and exhibits therewith.

## " *Conclusion of law.*

"From the foregoing findings of fact the court decides, as a conclusion of law, that the claimant is entitled to recover judgment against the United States, on the authority of the *Moseley* case, 35 C. Cl. 347, in the sum of three hundred and ten dollars and thirty-seven cents ($310.37)."

The case is in narrow compass. There is no controversy over the fact of expenditure of the sum sued for, and the Court of Claims found that "the accounts and itemized vouchers were presented to the accounting officers in the form prescribed by statute; that is to say, that each telegram sent by the Commission, and the cost thereof, and the dates, number of words, per-

sons from and to whom sent, places from and to which sent, and the charge for each message transmitted, were fully shown in a voucher approved by Martin A. Knapp, chairman, and the defendants concede the correctness of the several amounts so expended."

Relying on a former decision between the same parties, 35 Court Claims, 347, the court evidently thought that the issue made by the government was not substantial. In that case it was said: "The claimant's statement of account being in the form prescribed by statute, i. e., 'itemized vouchers therefor, approved by the chairman of the Commission,' is *prima facie* correct. The defendants do not controvert the fact of the expenditures therein shown to have been made under the direction of the Commission, nor of the money paid into the Treasury; and, as under the circumstances of this case we have no reason to doubt the correctness or legality of such expenditures, the claimant is entitled to recover, and judgment will be entered accordingly."

The case comes, therefore, to a very narrow question. The act to regulate commerce as amended March 2, 1889, Supp. Rev. Stat. 2d ed. 690, provides "all of the expenses of the Commission . . . shall be allowed and paid on the presentation of itemized vouchers therefor approved by the chairman of the Commission." The appropriation act of the same (Supp. Rev. Stat. 2d ed. 698) date provides: "That hereafter expenses of the Interstate Commerce Commission shall be audited by the proper accounting officers of the Treasury."

It is claimed that these provisions can be reconciled and leave unimpaired the first as the only condition of the allowance and payment of the expenses of the Commission. Not passing upon that but granting the power of the auditing officers to require something more, we think their requirement was substantially complied with.

It is to be remembered that the petitioner (appellee) is but the Secretary of the Commission. He does not direct its functions, its expenditures, or control its records. He could only submit the requirement of the Comptroller to the Commission and its response to the Comptroller. Its response was " that

so much of the Comptroller's communication as requires copies of telegrams relating to the business of the Commission to accompany telegraph vouchers for which credit is asked be disregarded by the Secretary and disbursing agent, the Commission holding that such messages are so far confidential as to justify refusal to disclose their contents, and that the requirement for their production is unreasonable and against public interest." This was a substantial compliance with the requirement of the Comptroller.

*Judgment affirmed.*